UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

UNITED STATES OF AMERICA,

    Plaintiff,                                          Docket No.: 0647 1:23CR00462-005

VS.

BRANDON KIMBROUGH,                      Electronically Filed

    Defendant.

## SENTENCING MEMORANDUM

AND NOW, comes the Defendant, Brandon Kimbrough, by and through his attorney, Sean Logue, Esquire, who brings the within Sentencing Memorandum, and in support thereof sets forth the following:

1. Sentencing in this matter is scheduled for September 24, 2024.

2. On June 20, 2024, Defendant entered a plea of guilty to Counts Eleven of the Indictment at Docket No. 23CR462 charging him with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) & 924(a)(8).

3. Given the Defendant's total offense level of 17 and criminal history category of II, the applicable advisory guidelines range would typically be 27-33 months.

4. However, it is the position of the Defendant that he has been over-criminalized by the criminal history category of II provided by the Government in the Presentencing report. Under USSG § 4A1.3(b)(1), "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."

1

5. Here, the Defendant's conviction for Receiving Stolen Property (F4) and Obstructing Official Business (F5) was given one point toward the criminal history category. However, both charges are non-violent crimes, and the Obstructing Official Business charge is overly vague and does not capture the true criminal history of the Defendant.

6. ORC § 2921.31 defines Obstructing Official Business as "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties and (B) Whoever violates this section is guilty of obstructing official business. Except as otherwise provided in this division, obstructing official business is a misdemeanor of the second degree. If a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree."

7. Here, Mr. Kimbrough was charged with Obstructing Official Business for fleeing from a vehicle, for which he was charged with a felony count based upon this overly vague statute. However, during this incident Mr. Kimbrough did not create a risk of harm to any person or officer, and we believe the felony charge is unwarranted and should not be counted against him.

8. Therefore, based on Mr. Kimbrough's criminal history, lacking violent and gun related offenses, we find a criminal history category of II over criminalizes the Defendant, and he respectfully asks this Court for a reduction in the criminal history category from II to I.

9. Additionally, Mr. Kimbrough is eligible for a variance in total offense level, being he was a minor participant in any criminal activity. If a defendant was a minor participant in any criminal activity, they are eligible for a decrease in offense level by two levels. USSG § 3B1.2(b).

Under this calculation, Mr. Kimbrough's total offense level would be 15 and a criminal history category of I, the applicable advisory guidelines range would be 18-24 months.

10. WHEREFORE, we respectfully request this Honorable Court for a variance of the a base offense level to 15, and a reduction in criminal history category due to the Defendant's over criminalization in the Presentencing Report. The Defendant respectfully requests this Court to sentence him within the appropriate guideline of 18-24 months of incarceration.

## SENTENCING FACTORS

11. 21 U.S.C. § 841(b)(1)(A)(viii), as well as 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i) provide the controlling factors for sentencing and are incorporated herein.

12. Defendant submits that a sentence below the Advisory Guidelines range is appropriate in this case for the following reasons:

13. Pursuant to *Booker v. United States,* 125 S.Ct. 738 (2005)*,* the Sentencing Guidelines are merely advisory, and a sentencing court shall be guided by the factors set forth in 18 U.S.C. 3553(a).

14. To be substantively reasonable, a sentence must be proportionate to the seriousness of the circumstances of the offense and offender and sufficient but not greater than necessary, to comply with the purposes of 18 U.S.C.S. § 3553(a). See United States v. Henderson, 6th Cir. No. 23-1786, 2024 U.S. App. LEXIS 18572, at *1 (July 26, 2024).

15. In reviewing sentences for procedural reasonableness we must ensure that the district court: (1) properly calculated the applicable advisory Sentencing Guidelines range; (2) considered the other 18 U.S.C.S. § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an outside-

Guidelines sentence and any decision to deviate from the advisory Guidelines range. United States v. Guerrero, 6th Cir. No. 23-1570, 2024 U.S. App. LEXIS 17686, at *1 (July 16, 2024).

16. In its colloquy, the court essentially recited certain of the § 3553(a) factors, briefly noted that it thought the guidelines accurately reflected "the heartland of America[n] sentencing," and that a low-end-of-the-guidelines sentence sufficiently accounted for deterrence and the seriousness of the offenses. United States v. Guerrero, 6th Cir. No. 23-1570, 2024 U.S. App. LEXIS 17686, at *15 (July 16, 2024).

17. We have repeatedly explained that 18 U.S.C. § 3553(a)(6)—"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"—is concerned with national disparities in sentences, not intra-case disparities. See, e.g., United States v. Conatser, 514 F.3d 508, 521 (6th Cir. 2008). United States v. Guerrero, 6th Cir. No. 23-1570, 2024 U.S. App. LEXIS 17686, at *31 (July 16, 2024).

18. In *Rita*, the Supreme Court held that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Rita v. United States, 551 U.S. 338 (2007).

19. USSG § 4A1.3(b)(1) states a downward departure may be warranted if reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or likelihood the defendant will commit other crimes. *Id.*

20. Under USSG § 3B1.2(a), regarding the total offense level, based on the defendant's role in the offense, if a defendant was a minimal participant in any criminal activity, a decrease by four levels is warranted. *Id.*

4

21. "When imposing a procedurally reasonable sentence, the district court must 'adequately explain the chosen sentence—including an explanation [*12] for any deviation from the Guidelines range.'" United States v. Johnson, 640 F.3d 195, 205 (6th Cir. 2011) (emphasis in original) (quoting Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007)). "First, a district court must explain the reasons justifying a departure, and, second, evidence of those reasons must appear in the record. Such explanation allows meaningful appellate review." Id. (quoting United States v. Smith, 474 F.3d 888, 894 (6th Cir. 2007), abrogated on other grounds by Gall, 552 U.S. at 51). And "if the sentence imposed is outside the advisory range, [then] the court is required to state 'the specific reason for the imposition of' its departure or variance." United States v. Zobel, 696 F.3d 558, 566 (6th Cir. 2012) (quoting 18 U.S.C. § 3553(c)(2)). United States v. Mitchell, 107 F.4th 534 (6th Cir.2024)

22. In *Gall v. United States*, 552 U.S. 38 the Court rejected any requirement of "extraordinary circumstances" as a justification for a downward variance from the guidelines' range as "not consistent with our remedial opinion in *United States v. Booker*." Slip. Op. at 6-7, (citation omitted). The Court explained that this approach "come[s] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guideline range." *Id*. at 8. Requiring "extraordinary circumstances" to justify a below guidelines sentence would impermissibly elevate the guidelines above the other factors articulated in 18 U.S.C. § 3553.

23. The Court in *Gall* also emphasized the broad discretion of the district court in imposing sentence. *Id*. at 598-97. "[T]he district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party, and then . . . make an individualized assessment based on the facts presented." *Id*.

5

24. Ultimately, the Court's task is to determine a sentence that is sufficient, but not greater than necessary, to comply the purposes set forth in 18 U.S.C. § 3553(a).

## PERSONAL INFORMATION AND BACKGROUND

25. Mr. Kimbrough's criminal history discloses a series of minor nonviolent offenses that began when he was 16 years old.

26. Mr. Kimbrough graduated from North Shore High School in Garfield Heights, Ohio. According to his mother he was given an individualized learning plan due to his learning deficiencies. He graduated with a 1.908 GPA.

27. As a child, Mr. Kimbrough was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and was prescribed Adderall, an amphetamine. He no longer is on any prescription due to his diagnosis, but he described his current mental health as "poor" due to experiencing symptoms of depression and anxiety. Mr. Kimbrough has shown interest in seeking future mental health treatment. Mr. Kimbrough additionally faces troubles with asthma that he has been dealing with since childhood.

28. While incarcerated a fellow inmate initiated an altercation with Mr. Kimbrough where he was injured. The other inmate stated to corrections officers that he solely started the fight which led to Mr. Kimbrough's injuries.

29. Mr. Kimbrough has no signs of substance abuse, besides being a previous user of marijuana. He has stated that he has been sober since his incarceration and plans to remain sober upon release.

30. Mr. Kimbrough has a large support system consisting of parents, siblings, grandparents, aunts, and uncles. He additionally has two children who he maintains contact with even while incarcerated. Upon release he plans to live at his family home with his mother and

father at 274 East 121st Street, Cleveland, OH. A home inspection for this residence is scheduled for August 29, 2024. Since his incarceration Mr. Kimbrough's parents have provided for his children and have given him money for commissary items and phone calls.

31. Upon release from incarceration, Mr. Kimbrough intends to begin a career in the trades of home remodeling and electric, which he has previous experience from working prior positions in these fields.

**OVER CRIMINALIZATION**

32. In the Government's Presentencing Report they concluded based upon Mr. Kimbrough's criminal convictions, he was a criminal history category of two offender. However, it is the Defendant's position that he has been over criminalized by the Government's report. One of the charges used to reach this conclusion was Mr. Kimbrough's 2023 conviction of Receiving Stolen Property (F4) and Obstructing Official Business (F5).

33. Here, neither of these charges are crimes of violence, and no violence was ever purported during the commission of this offense. Mr. Kimbrough was in a stolen vehicle, which it was not proven that he was the one who stole the vehicle. In addition, he was convicted of a felony Obstructing Official Business by fleeing the vehicle on foot. At no time was a weapon used or was any member of the public or police officers placed in danger by the Defendant fleeing, which is needed to justify a felony conviction under the statute.

34. As stated above, the Obstructing Official Business statute is over vague and does not capture the true criminal history of the Defendant. Therefore, he believes this conviction should not count against him in his current sentencing.

7

35. Presently, Mr. Kimbrough has pled guilty to one count of Felon in Possession of a Firearm. However, while Mr. Kimbrough has taken full responsibility for his count he is charged, he played a minimal role in the overall activities of his codefendants. Additionally, Mr. Kimbrough has assisted authorities in the investigation of his own misconduct by timely notifying authorities of the intention to enter a plea of guilty.

36. Mr. Kimbrough has no previous convictions for possession of or misuse of a firearm. Mr. Kimbrough's criminal history is not adequate to justify a criminal history category of level II. Accordingly, Mr. Kimbrough respectfully requests that the level II enhancement stemming from the Felon in Possession of a Firearm charge be eliminated.

## MOTION FOR VARIANCE OF TOTAL OFFENSE LEVEL

37. If the defendant was a minor participant in any criminal activity, a decrease of two levels of the total offense level is warranted. USSG § 3B1.2(b). A minor participant is a defendant who is the least culpable of those involved in the conduct of a group. If the Defendant is less culpable than most other participants they are eligible for a two point variance in base offense level . USSG § 3B1.2(a)(5)

38. In total Mr. Kimbrough's and his co-defendants were charged with the sale of twenty-nine firearms, seven of which met the federal definition for machine guns. However, Mr. Kimbrough was involved in the sale of only **one** of those firearms, which was not a machine gun, stolen, or defaced in any manner. The charge he has pled guilty too, is among the lowest charges of all the co-defendants.

39. Additionally, Mr. Kimbrough was unaware that he was participating in a larger enterprise being ran by his co-defendant, Malachi Berry. He did not know Mr. Berry was running a larger enterprise, he was under the understanding he was making a one-off sale for Mr. Berry,

8

which he only did in an unwise attempt to make money to support his daughters. Mr. Berry also orchestrated the sale of machine gun conversion devices, stolen firearms, and defaced firearms. Mr. Kimbrough did not participate in any of the sales regarding these weapons, which would constitute more serious charges, like those of his co-defendants.

40. Based on the foregoing, Mr. Kimbrough respectfully requests a variance of his total offense level from 17 to 15.

## **DEFENDANT SHOULD BE SENTENCED ACCORDING TO THE APPROPRIATE GUIDELINE RANGE**

41. Mr. Kimbrough acknowledges that his offense conduct was very serious. He has accepted responsibility for his charge. The minimum sentence set by the guideline imprisonment range, based solely on his criminal history and instant offense, would be 27 months. However, based on the above reasons, we believe that Mr. Kimbrough is eligible for a reduction in his criminal history category and a variance of two levels in the offense level is warranted. This would place Mr. Kimbrough with an offense level of 15, with a criminal history category of level I, and the applicable advisory guidelines range would be 18-24 months. Given Mr. Kimbrough's minimal criminal history of serious crime, and his minimal participation in the enterprise, he respectfully requests the Court sentence him according to what his conduct strictly calls for, on the lower end of the range provided by the appropriate guidelines.

42. Additionally, Mr. Kimbrough has not been charged with any other crimes while incarcerated. He has received minimal infractions from corrections officers during his current incarceration. He also has expressed interest in receiving mental health treatment while incarcerated to mitigate his depression and anxiety symptoms which play a significant role in criminality in this case. Mr. Kimbrough hopes upon release to have gainful employment in the

construction field. He also wishes to take a larger role in the parenting of his daughters and provide them with a positive father figure. He has a more than adequate support system, and none of his family members have been in legal trouble before. Both of his parents have had long-term employment and are patiently waiting to assist Mr. Kimbrough in being a law-abiding citizen. He will be staying at his parent's home and under their supervision upon his release.

43. Mr. Kimbrough is facing a significant period of incarceration in federal prison. The issue is how long is necessary to reflect the seriousness of the offense, protect the public from his criminality, and offer adequate deterrence and to provide Mr. Kimbrough with the educational, rehabilitative, and vocational skills necessary to become a productive member of society. In their pre-sentence investigation report, the Government appropriately points out the nature of the offense conduct. However, the lack of violence and weapons charges in Mr. Kimbrough's record and his minimal participation in the enterprise - would 18-24 months of incarceration provide this offender with any greater deterrence than 27 months would? Is Mr. Kimbrough's risk of re-offending lessened with each additional month or year of incarceration in federal prison?

44. Ultimately, the question is whether additional incarceration will be his ability to be a positive figure in his children's lives, his future employment prospects, and whether those considerations outweigh the gravity of his conduct given that there is no indication that he represents a danger to the community. Mr. Kimbrough will ask the Court to designate him to a Bureau of Prisons institution that is of low-level security.

## **CONCLUSION**

45. Mr. Kimbrough takes his crimes seriously and has expressed remorse. He has taken responsibility by pleading guilty and admitting involvement in the offense to the Court. He has never impeded or obstructed justice in this case, and his offenses have no identifiable victims. He

assisted authorities in the investigation of his own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Additionally, he did not have extensive knowledge of the enterprise being run by Mr. Berry, and he only participated in the sale of one out twenty-nine guns sold under Mr. Berry's enterprise, which would classify him as a minimal participant under the sentencing statute.

46. In conclusion, when Mr. Kimbrough's conduct is viewed in its totality, he was chiefly involved in the sale of one handgun. He had no discernable organizational role in Mr. Berry's enterprise. Accordingly, justice demands that Mr. Kimbrough be assigned a base offense level of 15. Mr. Kimbrough accepted a plea offer early and accepted responsibility for his conduct, subtracting 3 points from his base offense level.

47. As discussed, Mr. Kimbrough has a criminal history that is inadequate to categorize him as having a level II criminal history and he is hopeful for a variance of his criminal history category to level I. Additionally, due to his minor participation in the enterprise, he is hopeful for a reduction in his offense level to 15.

48. Finally, he hopes for a variance from the sentencing guidelines in recognition of his minimal participation in the enterprise, inadequate criminal history, and acceptance of responsibility.

49. Given Mr. Kimbrough's remorse, his wish to take a prominent role in the parenting of his daughters, his more than adequate family support system, and hopes of becoming gainfully employed in construction, it is his sincere hope that this Honorable Court will impose a sentence at the low end of the sentencing guidelines for base offense level 13 in accordance with the above calculations, at approximately 12 months.

       Respectfully Submitted,

       /s/ Sean T. Logue, Esquire

       Sean T. Logue, Esquire
       Ohio ID #96546
       27 W. Main Street
       Carnegie, PA 15106
       Phone: 412.389.0805
       Fax: 412.253.6520
       Email: sean@seanloguelaw.com